UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID J. BUTLER,

    Plaintiff,

        v.

KATHLEEN SEBELIUS,

    Defendant.

Civil Action No. 10-932 (JEB)

**MEMORANDUM OPINION**

    Plaintiff David J. Butler is a black male over the age of forty employed by the United States Department of Health and Human Services. After failing to obtain a promotion that went to a white woman, he filed this suit claiming HHS discriminated against him because of his race, age, and sex. Defendant has now filed a Motion for Summary Judgment. Because no reasonable jury could find that Defendant's stated reasons for its employment decision were pretextual, the Court will grant Defendant's Motion.

**I.    Background**

    Plaintiff has been employed as a GS-13 Child Welfare Program Specialist in the Children's Bureau (CB) since May 23, 1999. See Mot., Exh. 5 (Pl.'s Aff.), ¶ 2. The Children's Bureau is one of two bureaus that make up the Administration for Children, Youth and Families (ACYF), which is an agency of HHS. Id.

    On June 19, 2006, ACYF issued a vacancy announcement for the newly created position of Budget Officer of ACYF. Opp. at 3-4; see Mot., Exh. 6 (Budget Officer Position Description). The main responsibilities of the Budget Officer were to "formulate, prepare, execute and oversee ACYF's budget of $9 billion." Opp. at 3 (citing Opp., Exh. 1 (Depo. of Joan

Ohl) at 27); see also Budget Officer Position Description (Major duties: "The incumbent serves as team leader and technical authority responsible for the planning, justification, formulation and execution of financial operations of ACYF's program and administrative budgets with responsibility for making allowances and sub-allowances to ACF central and regional offices for effective operation of ACYF programs."). To successfully complete the above responsibilities, the Budget Officer needed to be familiar with both program and grant budgets. Opp. at 3 (citing Depo. of Ohl at 27); see also Budget Officer Position Description.

On June 30, 2006, Plaintiff applied for the Budget Officer position. See Def.'s Stat. Undis. Mat. Facts (SUMF), ¶ 5. Catherine Wade, a white female over age forty, also applied for the position. Id., ¶¶ 4, 6; Mot., Exh. 9 (Selectee Application). From 2005 to the time of the selection, Wade was a GS-14 Senior Financial Management Analyst at HHS. Def.'s SUMF, ¶ 8; Selectee Application at 7-8.

Dr. Maiso Bryant, the Acting Deputy Commissioner of ACYF, reviewed all the applications for the Budget Officer position and recommended Plaintiff, Catherine Wade, and one other candidate. Mot., Exh. 13 (Decl. of Maiso Bryant), ¶ 4; Def.'s SUMF, ¶ 7. Bryant thought that all three candidates could have successfully performed the Budget Officer position. Decl. of Bryant, ¶¶ 3-5; Def.'s SUMF, ¶ 8. Commissioner Joan Ohl, a white female, ultimately selected Wade. Opp. at 5; Compl., ¶ 8. She explained: "The factors I considered in making my decision were that we were setting up a new office with new procedures, and that we needed a person who had leadership skills, good vision, and good communications skills and expertise in managing and administering funds." Statement of Ohl, ¶ 10.

After exhausting his claim through the administrative process, Plaintiff filed the instant Complaint on June 7, 2010. He claimed that he had been discriminated against on the basis of

his race, age, and sex. Compl., ¶ 1. On July 5, 2011, Defendant filed the dispositive Motion that the Court now addresses.

## II.     Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. Holcomb, 433 F.3d at 895; Liberty Lobby, Inc., 477 U.S. at 248. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, Inc., 477 U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." FED. R. CIV. P. 56(c)(1)(A).

The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." Taxpayers Watchdog, Inc., v. Stanley, 819 F.2d 294, 297 (D.C. Cir. 1987). When a motion for summary judgment is under consideration, "the evidence of the non-movant[s] is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmovant is required to provide evidence that would permit a reasonable jury to find in its favor. Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Liberty Lobby, Inc., 477 U.S. at 249-50.

### III.  Analysis

Plaintiff contends that Defendant violated the anti-discrimination provision of Title VII with respect to his non-promotion. Opp. at 1. Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court established the familiar three-step "burden-shifting approach to employment discrimination claims in cases where the plaintiff lacks direct evidence of discrimination." Chappell-Johnson v. Powell, 440 F.3d 484, 487 (D.C. Cir. 2006). "[W]here an employee has suffered an adverse employment action and an employer has asserted a legitimate, nondiscriminatory reason" for its employment decision, however, the Court need not consider whether Plaintiff has made out a *prima facie* case under McDonnell Douglas; rather, it deploys a simpler analysis:

> [I]n considering an employer's motion for summary judgment or judgment as a matter of law in those circumstances, the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the

4

>employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?

Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008). The Court, therefore, will follow Brady and its progeny in determining, with regard to the alleged incident of discrimination, first whether the Brady prerequisites – an adverse employment action and a nondiscriminatory explanation – have been satisfied, and then, if so, whether Plaintiff has produced sufficient evidence for a reasonable jury to find that Defendant's asserted reason was pretextual and that Defendant in fact discriminated against him.

Plaintiff's claim is that Defendant discriminated against him "by denying him a promotion to the GS-14 position of Budget Officer of the Administration for Children Youth and Families" and hiring Catherine Wade, a younger white woman, instead. Opp. at 1. No one doubts that the failure to promote constitutes an adverse employment action. See, e.g., Stella v. Mineta, 284 F.3d 135, 146 (D.C. Cir 2001) ("no question that failure to promote is an 'adverse action'"). It is similarly not disputed that Defendant has offered legitimate, nondiscriminatory reasons for choosing to promote Wade instead of Plaintiff. First, Wade already held a GS-14 position (which meant that her transfer was a lateral one and that Wade was already performing at a GS-14 level). Mot. at 2. Second, Wade had stronger experience and superior skills than Plaintiff, which made her the best match for the position. Mot. at 5; Statement of Ohl, ¶¶ 13-15; Depo. of Ohl at 33-34, 40-42. The only remaining question, accordingly, is whether Plaintiff has "produced sufficient evidence for a reasonable jury to find that Defendant's asserted nondiscriminatory reason" is mere pretext for unlawful discrimination. Brady, 520 F.3d at 494.

    A. Comparison of Qualifications

5

Plaintiff makes two arguments in support of his contention that Defendant's proffered explanation was pretextual. First, Plaintiff briefly argues that his qualifications for the position were superior to Wade's. Opp. at 3-5. Evidence that Plaintiff was better qualified, however, does not suffice to support an inference of discrimination; rather, a jury must be able to find Plaintiff was "<u>significantly</u> better qualified for the job" than Wade. <u>Holcomb</u>, 433 F.3d at 897 (emphasis added). The difference must be "great enough to be inherently indicative of discrimination." <u>Jackson v. Gonzales</u>, 496 F.3d 703, 707 (D.C. Cir. 2007) (internal quotation marks omitted). Only then could a jury "legitimately infer that the employer consciously selected a less-qualified candidate -- something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture." <u>Id.</u> (internal quotation marks omitted). "In a close case, a reasonable [fact-finder] would usually assume that the employer is more capable of assessing the significance of small differences in the qualifications of the candidates, or that the employer simply made a judgment call." <u>Aka v. Washington Hosp. Ctr.</u>, 156 F.3d 1284, 1294 (D.C. Cir. 1998).

In this case, a reasonable jury could not find that Plaintiff possessed the "stark superiority of credentials" over Wade that can give rise to an inference of pretext. <u>Stewart</u>, 352 F.3d at 429. Wade was already a GS-14 employee with HHS, while Plaintiff was a GS-13 employee. Def's. SUMF, ¶¶ 1, 6. Wade had successful leadership and management experience, <u>see</u> Selectee Application ("Team Leader for the Formula Grant team"), while Plaintiff had experience in neither of these fields. <u>See</u> Depo. of Janet Shafer at 15 (Plaintiff's supervisor stated, "I haven't seen him in that kind of leadership role where he is either a team leader or in a supervisory role."). As a Financial Management Specialist from 2001 to 2004, Wade administered six federal grant programs totaling over $5 billion and provided expert advice on grants management

issues to headquarters and regional offices.  See Selectee Application.  She also prepared annual expenditure tables and charts and reconciled disbursed funds.  Id.  Beginning in 2005, Wade served as a Senior Financial Management Specialist at HHS.  Id.  In that position she continued to "[m]anage [f]ederal formula/mandatory grant programs" and "provide[d] training and guidance to three Financial Management Specialist[s] responsible for 15 programs that award $1.1 billion to States, Territories, and Tribes."  Id.

As a Child Welfare Program Specialist, conversely, Plaintiff has been responsible for all activities regarding the CB's budget.  Pl.'s Aff., ¶ 27; Compl., ¶ 6.  Specifically, Plaintiff has been responsible for programming of funds, committing funds, providing budget and program data for budget submissions to the Office of Legislative Affairs and Budget and the Office of Management and Budget, and preparing the Justification of Estimates for Appropriations Committees.  Pl.'s Aff., ¶ 27; Compl., ¶ 6.  The CB has a budget of $7.5 billion.  Opp. at 1; Opp., Exh. 3 (Depo. of Shafer) at 8.  From 1992 to 1999, Plaintiff was similarly responsible for all activities regarding the Family and Youth Service Bureau's (FYSB) budget.  Pl.'s Aff., ¶ 27; Compl., ¶ 6.  The FYSB has a budget of $1.5 billion.  Opp. at 1; Depo. of Shafer at 8.

From 1992 to 2010, Plaintiff's performance of his budget responsibilities was rated outstanding, the highest rating possible.  Opp. at 4; Opp., Exh. 6 (Performance Ratings) at 4.  Plaintiff's first-level supervisor at the CB described Plaintiff's performance as "Excellent, outstanding" and stated that he is a "great planner" and "anticipates issues and prepares for them, so there are no surprises."  Pl.'s Aff., ¶ 6; Depo. of Shafer at 14-15.  Plaintiff's supervisor also testified that Plaintiff had successfully structured complex budgets and facilitated interaction across his bureau in budget planning.  Id. at 16-17; Opp. at 4.

7

Both candidates are thus distinguished in their qualifications. Yet, even with the benefit of all inferences from the evidentiary record, Plaintiff can demonstrate that, at best, he was only slightly more qualified for the Budget Officer position. Indeed, a reasonable jury could conclude that he was less so. There is, at bottom, no question that the contrast between Plaintiff's and Wade's qualifications for the Budget Officer position was not "great enough to be inherently indicative of discrimination." Jackson, 496 F.3d at 707 (internal quotation marks omitted); see also Aka, 156 F.3d at 1296 (finding evidence of qualifications gap sufficient to defeat summary judgment where the plaintiff had nineteen years of relevant work experience, while selectee had two months of volunteer experience).

    B. Credibility of Explanation

Plaintiff next argues that, "[w]hile establishing that an employee is demonstrably more qualified than the selectee is one way of demonstrating pretext, it is not the only way." Opp. at 9-10. For example, an employee may demonstrate pretext "by showing that the employer's proffered explanation is unworthy of credence." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981). In support of this position, Plaintiff relies on the recent case of Colbert v. Tapella, 649 F.3d 756 (D.C. Cir. 2011). The D.C. Circuit there held that a "jury can conclude that an employer who fabricates a false explanation has something to hide; that 'something' may well be discriminatory intent." Id. at 759 (quoting Aka, 156 F.3d at 1293.) Yet, this is a highly selective quotation. Indeed, on the very same page, the court stated,

> A plaintiff cannot always avoid summary judgment by showing the employer's explanation to be false. . . . For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

8

Id. (citing Reeves v. Sanderson Plumbing Prods., Inc., 540 U.S. 133, 148 (2000)) (emphasis added; internal citations omitted).

The instant case clearly falls under the latter exception since Plaintiff has created only a weak issue of fact on the truth of the employer's reason and there is abundant and uncontroverted independent evidence of a lack of discrimination. The only evidence offered by Plaintiff that Defendant had "something to hide" is Ohl's allegedly inconsistent explanations for Butler's nonselection. Plaintiff points to three of these. A closer reading of Ohl's statements, however, reveals merely one minor inconsistency.

First, Plaintiff argues, "The fact that Ohl found Wade to be 'articulate and self assured' simply cannot be a reason for her selection, because Ohl did not speak to Wade until after she made the selection." Opp. at 10; Depo. of Ohl at 34 (admitting that she did not interview Wade and she did not meet her until after the selection). Ohl, however, specifically noted in her administrative declaration that she had knowledge of Wade's performance and that she made her choice based on the candidates' application materials. See Statement of Ohl, ¶ 7-8 ("had knowledge of Ms. Wade's work" and "[based] on my review of the candidates' application materials, I chose Catherine Wade for the position"). It is certainly possible to determine that someone is articulate and self-assured through their presentation on paper, and here Ohl also had knowledge of Wade's performance. No contradictions thus exist.

Second, Plaintiff argues that "[in Ohl's] sworn statement, she claimed that she rejected Butler because 'he does not seem to have the same leadership and communications skills that [Wade] does.'" Opp. at 11 (quoting Opp., Exh. 11 (Ohl Aff.), ¶ 15). Yet, at her deposition, Ohl admittedly testified that she did not have an opinion of Butler's communication skills one way or the other because she only saw him periodically. Opp. at 11; Depo. of Ohl at 50-51. While there

9

may indeed be some change of position here, it is quite minor when considered in the context of all of her reasons for selecting Wade. See Depo. of Ohl at 41-42 (providing reasons).

Third, Plaintiff argues that Ohl changed her reasons for hiring Wade instead of Plaintiff between her administrative declaration and her deposition. Opp. at 5-6. Specifically, Plaintiff notes that out of the ten reasons listed by Ohl in her deposition, one was that Wade had worked in "diverse settings." Opp. at 5-6; Depo. of Ohl at 41. Plaintiff argues that Ohl, in her declaration, made no mention of this allegedly important reason. Opp. at 6; Statement of Ohl. By comparing the declaration and the deposition, however, it becomes apparent that Plaintiff is mistaken. Ohl indeed addressed this reason in her earlier statement. In her sworn statement, Ohl states:

> Ms. Wade had grade level 14 experiences, which Complainant did not. She had worked in the Office of Administration with grants and budget. Previously, she had worked overseas and she had academic qualifications.

Statement of Ohl, ¶ 14 (emphasis added).

During her deposition, her explanation is similar:

> Q: We sort of went through a lot of different reasons why you were impressed with her. What were the reasons that you selected her over Mr. Butler?
> A: Well, she had sustained management experience. She had budget experience. She had grant experience. She had supervisory experience. She had worked in diverse settings. She had been promoted within her position, and she had been recognized for her management experience. I saw that as having shown leadership. And I was aware of having – from having seen her or knowing of people, that she had good communication skills, and she trained people.
> . . .
> Q: Okay. When you say she worked in diverse settings, what do you mean by that?
> A: She had worked in – she had worked in the Air Force. She had worked out of the country, worked in a foreign country. She had

> both American nationalists as well as German citizens who reported to her.

Depo. of Ohl at 41-42 (emphasis added).  Since working overseas is described as equivalent to working in diverse settings, Ohl has been entirely consistent.  Even with the benefit of all inferences from the evidentiary record in favor of Plaintiff, therefore, the existing discrepancies in Ohl's statements are so minor that no reasonable jury would be able to infer discrimination from them.

A comparison of the facts in Colbert with the facts here further suggests that Defendant's Motion for Summary Judgment should be granted.  In Colbert, where the D.C. Circuit reversed a grant of summary judgment to the employer, it noted: "[G]iven [employer's] lie, his apparent lack of knowledge about [employee's] actual experience or training, and other evidence that the hiring and promotion practices of [employer] were generally inhospitable to minorities, additional evidence of discrimination was not necessary for [employee] to defeat summary judgment."  649 F.3d at 760.  Here, there is no evidence of any of these factors.  In fact, Acting Deputy Commissioner Bryant, the individual who had recommended Butler for the Budget Officer position, herself believed that no discrimination occurred in the selection of Wade.  Decl. of Bryant, ¶ 10-12.

Ultimately, the Court must defer to an employer's judgment absent a viable showing of pretext.  As Plaintiff has failed to make such a showing, the Court concludes that there are no genuine issues of material fact that would warrant proceeding to trial on this claim.

## IV.   Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment.  A separate Order consistent with this Opinion will be issued this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  Feb. 8, 2012